IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **FREDERICK BANKS,** : | **CIVIL ACTION NO. 1:21-CV-777** |
| : | |
| Petitioner : | (Judge Conner) |
| : | |
| v. : | |
| : | |
| **WARDEN M. THOMPSON,** : | |
| : | |
| Respondent : | |

**MEMORANDUM**

Presently before the court is a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 (Doc. 1) filed by petitioner Frederick Banks ("Banks"), an inmate in the custody of the Federal Bureau of Prisons ("BOP"). For the reasons set forth below, the court will deny the petition.

**I.   Background**

   **A.   Factual Background**

Banks was sentenced in the United States District Court for the Western District of Pennsylvania to an aggregate 104-month term of imprisonment for wire fraud and aggravated identity theft. (Doc. 8-2 at 1, Declaration of Erin Frymoyer, BOP Attorney ("Frymoyer Decl."), ¶ 3). His projected release date is January 22, 2023, *via* good conduct time. (Id.)

On March 10, 2021, Banks was transferred to the Federal Correctional Complex, Allenwood, Pennsylvania, and was held in quarantine at the United States Penitentiary, Allenwood, until March 31, 2021. (Id. ¶ 4). On March 31, 2021 Banks was placed in the Allenwood Low Federal Correctional Institution. (Id.)

Banks is enrolled in the chronic care clinic for management of his chronic care conditions, including hypertension and hyperlipidemia. (Id. ¶ 11). He was last seen in the chronic care clinic on May 6, 2021. (Id.) Banks was scheduled for a six-month follow-up for his hypertension and a one-year follow-up for his hypertension and hyperlipidemia. (Id.) Banks received both doses of the Moderna COVID-19 vaccine. (Id. ¶ 12).

In the instant habeas petition, Banks alleges that he was has wrongfully denied release to home confinement due to an "illegal" incident report filed against him on April 26, 2021 for mail abuse. (Doc. 1 at 6-7). For relief, Banks seeks release to home confinement and expungement of the incident report. (Id. at 8).

Respondent argues that the petition must be dismissed for the following reasons: (1) Banks was afforded his due process rights regarding the disciplinary hearing and the DHO decision is supported by some evidence; (2) BOP decisions concerning home confinement are not subject to judicial review; (3) Banks is not a priority candidate for home confinement; and (4) Banks has not shown that the BOP exceeded its legal authority, acted unconstitutionally, or failed to follow statutory or regulatory authority. (Doc. 8). The petition is ripe for resolution.

  **B. BOP Disciplinary Process**

The BOP's disciplinary process is outlined in Code of Federal Regulations ("C.F.R."), Title 28, Sections 541 through 541.8. These regulations dictate the manner in which disciplinary action may be taken should a prisoner violate, or attempt to violate, institutional rules. The first step requires filing an incident report and conducting an investigation pursuant to 28 C.F.R. § 541.5. Staff is

required to conduct the investigation promptly absent intervening circumstances beyond the control of the investigator. 28 C.F.R. § 541.5(b).

Following the investigation, the matter is then referred to the Unit Disciplinary Committee ("UDC") for an initial hearing pursuant to 28 C.F.R. § 541.7. If the UDC finds that a prisoner has committed a prohibited act, it may impose minor sanctions. Id. If the alleged violation is serious and warrants consideration for more than minor sanctions, or involves a prohibited act listed in the greatest or high category offenses, the UDC refers the matter to a Disciplinary Hearing Officer ("DHO") for a hearing. Id. Greatest Severity category offenses carry a possible sanction of, *inter alia*, loss of good conduct time credits. 28 C.F.R. § 541.3. In the event that a matter is referred for a hearing, the Warden is required to give the inmate advance written notice of the charges no less than 24 hours before the DHO hearing and offer the inmate a full-time staff member to represent him at the DHO hearing. Id. at § 541.8 (c) and (d).

At the DHO hearing, the inmate is "entitled to make a statement and present documentary evidence" and has the right to present documents and submit names of requested witnesses and have them called to testify. Id. at § 541.8(f). The DHO shall "call witnesses who have information directly relevant to the charge[s] and who are reasonably available." Id. § 541.8(f)(2). The DHO need not call repetitive witnesses or adverse witnesses. Id. § 541.8(f)(3). The inmate has the right to be present throughout the DHO hearing except during "DHO deliberations or when [his] presence would jeopardize institution security, at the DHO's discretion." Id. § 541.8(e). The DHO must "consider all evidence presented during the hearing." Id.

3

§ 541.8(f).  "The DHO's decision will be based on at least some facts and, if there is conflicting evidence, on the greater weight of the evidence."  Id.  The DHO has the authority to dismiss any charge, find a prohibited act was committed, and impose available sanctions.  Id. at § 541.8.  The DHO must prepare a record of the proceedings sufficient to document the advisement of inmate rights, DHO's findings, "DHO's decision", specific "evidence relied on by the DHO" and must identify the reasons for the sanctions imposed.  Id. at § 541.8(f)(2).  A copy must be delivered to the inmate.  Id.

      **C.**     **Incident Report 3497861**

On April 26, 2021, Banks received Incident Report 3497861, charging him with violation of Prohibited Act Code 296—Mail Abuse, Disrupt Monitoring.  (Doc. 8-2 at 3).  The Incident Report contained the following description of the incident:

> On April 26, 2021 at approximately 1415, I was monitoring TRULINCS emails and became aware that I/M Banks #05711-068 was using a third party text service.  An email was sent on April 3, 2021 at 1332 to Karen Delerocco, stocksbonds@emailinterface.org.  The subject was ggl and the message stated "ashley kline" + phone number.  Another email was sent April 3, 2021 at 1327 to the same email address and the subject is 7248691275, where I/M Banks #05711-068 responds to the recipient as Jen.  On April[] 3, 2021 at 1326, another email is sent to the same email with the subject line annettekp@aol.com and the recipient is referred as Annette.  Inmate Banks #05711-068 is using the email stocksbonds@emailinterface.org to circumvent TRULINCS and the E-mail monitoring system.

(Id.)

At the time of delivery of the Incident Report, officials advised Banks of his rights, including his right to remain silent.  (Id. at 5).  He indicated that he understood his rights and remarked "No where in the inmate A&O Handbook does

4

it state that I can not use a text forwarding service." (Id.) On April 28, 2021, the UDC referred the Incident Report to the DHO because appropriate sanctions were not available at the UDC level, and advised Banks of the rights afforded as a result of the DHO referral. (Id. at 4, 7-9). Banks refused to sign the Inmate Rights at Discipline Hearing form and the Notice of Discipline Hearing Before the DHO form. (Id. at 7-8). Banks requested a staff representative and waived his right to call witnesses. (Id. at 8).

The DHO hearing convened on May 6, 2021. (Id. at 10-13). Banks was represented by his requested staff representative, expressed an understanding of his rights before the DHO, and denied the charges. (Id.) He provided the following statement: "I've only been on the compound since March 31st. There is nothing in the A&O Booklet on text services. The Warden put out a memo on April 8th. They knew about me using a text service on April 21st; RDAP advised me on April 21, after the Unit Team told them. A 296 is not even the right Code; this is not mail. I want the Warden as a witness because she knows the notice was not put out until April 8th." (Id. at 10). Banks requested that Warden Thompson provide testimony on his behalf to confirm that she issued a memorandum to the general population about text services. (Id. at 11). However, the DHO did not call the Warden as a witness, finding that any testimony from the Warden would be redundant because the DHO and Banks were aware of the memorandum. (Id.) The DHO noted that the investigating officer reviewed Banks' email communications on April 26, 2021 and became aware of potential misconduct on that date. (Id. at 11). The DHO also

stated that Code 296, Misuse of the Mail, was similar to the charged behavior of misuse of email privileges. (Id.)

The DHO found sufficient evidence that Banks committed the Code 296 violation after considering and relying upon the written incident report, the emails sent by Banks through TRULINCS, the Warden's memorandum to the general population regarding text services, and Banks' approved contact list. (Id. at 11-12). The DHO elaborated that "Bureau of Prisons policy cites inmate communications that circumvent monitoring are prohibited. The forwarding of Trulincs communication to non-approved entities would fall within circumvention behavior." (Id. at 12).

The finding of guilt resulted in disallowance of 27 days of good conduct time and loss of email privileges for 3 months. (Id. at 13). The DHO cited the following reasons for imposition of sanctions: "Banks' behavior of using a third party email to text service to forward TRUlincs email communications and to perform a Google search at his request circumvents BOP policy and provided internet access. Accordingly, disallowance of good conduct time is sanctioned to punish the inmate for his misconduct, while loss of email privileges, may aid in deterring him and possibly other inmates from negatively acting out while incarcerated." (Id.) At the conclusion of the hearing, the DHO advised Banks of his appeal rights. (Id.)

## II.  Discussion

### A.  Disciplinary Hearing

Banks first claims that his due process rights were violated because the incident report was illegal and issued in retaliation to prevent him from being

transferred to home confinement. (Doc. 1 at 6). The Due Process Clause of the Fifth Amendment of the Constitution of the United States provides: "No person shall . . . be deprived of life, liberty, or property, without due process of law." U.S. CONST. amend. V. Federal inmates possess a liberty interest in good conduct time. See Wolff v. McDonnell, 418 U.S. 539, 555-57 (1974); Young v. Kann, 926 F.2d 1396, 1399 (3d Cir. 1991).

When a prison disciplinary hearing may result in the loss of good conduct time credits, due process requires that the prisoner receive certain due process protections: (1) written notice of the claimed violation at least twenty-four (24) hours in advance of the hearing; (2) the opportunity to call witnesses and present documentary evidence when consistent with institutional and correctional goals; (3) assistance in presenting a defense if the inmate is illiterate; (4) an impartial tribunal; and (5) a written statement by the factfinder as to evidence relied on and reasons for the disciplinary action. See Wolff, 418 U.S. at 564.

Where the due process requirements are met, the decision of the hearing examiner will be upheld if there is "some evidence" in the record to support the decision. Superintendent v. Hill, 472 U.S. 445, 455 (1985); see also Young, 926 F.2d at 1402-03 (applying Hill standard to federal prisoner due process challenges to prison disciplinary proceedings). The determination of whether the standard is satisfied "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." Id. at 455.

In accordance with Hill, there need only be "some evidence" to support the disciplinary decision. 472 U.S. at 455-56; see also Denny v. Schultz, 708 F.3d 140, 145 (3d Cir. 2013) (noting that the court "need only find that the [Hearing Officer's] decision had 'some basis in fact' in order to affirm the decision as comporting with the Due Process Clause"). In concluding that the greater weight of the evidence supported a finding of guilt, the DHO considered the reporting staff member's incident report, the emails sent by Banks, the Warden's memorandum regarding text services, and Banks' approved contact list. The DHO's reliance on such documentary evidence supports a conclusion that the decision has some basis in fact and is supported by some evidence.

Banks asserts that the proceedings should be invalidated because other BOP staff were aware of his use of the texting service prior to the incident report being issued, and thus he did not receive notice of the charges within twenty-four hours of the incident. (Doc. 1 at 7). 28 C.F.R. § 541.5(a), states that an inmate is to "ordinarily receive the incident report within 24 hours of staff becoming aware of [his] involvement in the incident." However, the regulations do not mandate such a timeframe and neither does Wolff. See Millhouse v. Warden Lewisburg USP, 785 F. App'x 931, 934 (3d Cir. 2019); see also Lang v. Sauers, 529 F. App'x 121, 123 (3d Cir. 2013). Wolff only requires that an inmate be provided notice of the charges against him 24 hours in advance of the disciplinary hearing. Id.; id. It is undisputed that he received such notice. There is no merit to this argument.

Banks also claims that prison officials issued the report for retaliatory reasons. Because this claim, as it relates to the loss of his good time credits, affects

8

the duration of his sentence, it is properly raised in his habeas petition.  See Queen v. Miner, 530 F.3d 253, 255 n. 2 (3d Cir. 2008).  However, our determination that there is some evidence to support the DHO's decision negates the claim.  See McGee v. Scism, 463 F. App'x 61, 64 (3d Cir. 2012) (citing Henderson v. Baird, 29 F.3d 464, 469 (8th Cir. 1994) (holding that if a prison disciplinary committee's finding of a violation of prison rules is based on some evidence, that "finding essentially checkmates [a] retaliation claim")).  See also Lasko v. Holt, 334 F. App'x 474, 477 (3d Cir. 2009) (holding because sufficient evidence supported the DHO's disciplinary determination, the retaliation claim must fail) (citing Carter v. McGrady, 292 F.3d 152, 159 (3d Cir. 2002)).

Finally, the court finds that all sanctions imposed by the DHO were within the limits of 28 C.F.R. § 541, *et seq*.  Banks was found guilty of a 200-level, high severity prohibited act.  Pursuant to 28 C.F.R. § 541.3, the following are the sanctions available for 200-level prohibited acts:

    A.    Recommend parole date rescission or retardation.
    B.    Forfeit and/or withhold earned statutory good time or non-vested good conduct time up to 50% or up to 60 days, whichever is less, and/or terminate or disallow extra good time (an extra good time or good conduct time sanction may not be suspended).
    B.1    Disallow ordinarily between 25% and 50% (14-27 days) of good conduct time credit available for year (a good conduct time sanction may not be suspended).
    C.    Disciplinary segregation (up to 6 months).
    D.    Make monetary restitution.
    E.    Monetary fine.
    F.    Loss of privileges (e.g., visiting, telephone, commissary, movies, recreation).
    G.    Change housing (quarters).
    H.    Remove from program and/or group activity.
    I.    Loss of job.

   J. Impound inmate's personal property.
   K. Confiscate contraband.
   L. Restrict to quarters.
   M. Extra duty.

28 C.F.R. § 541.3 (Table 1).

The sanctions imposed by the DHO in this instance were consistent with the severity level of the prohibited act and within the maximum available to the DHO.

Further, "[t]he Eighth Amendment is violated only when a punishment is grossly disproportionate to the severity of the offense." Levi v. Holt, 192 F. App'x 158, 162 (3d Cir. 2006) (citing Rummel v. Estelle, 445 U.S. 263, 271-74 (1980)). Therefore, only sanctions that "impose [ ] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life," may be deemed excessive. Moles v. Holt, 221 F. App'x 92, 95 (3d Cir. 2007) (citing Sandin v. Conner, 515 U.S. 472, 484 (1995)). The penalties imposed here, loss of good conduct time and loss of email privileges, do not work an "atypical and significant hardship" on Banks and do not serve to extend his confinement beyond the expected parameters of his sentence. Sandin, 515 U.S. at 484-85. Consequently, he is not entitled to relief.

  **B.** **The CARES Act and Judicial Review of Home Confinement Decisions**

The BOP has exclusive discretion to "designate the place of [a] prisoner's imprisonment." 18 U.S.C. § 3621(a). Pursuant to this authority, the BOP may "place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." 18 U.S.C. § 3624(c)(2). The BOP "shall, to the extent practicable, place prisoners with lower risk levels and lower

needs on home confinement for the maximum amount of time permitted under this paragraph." Id.

On March 26, 2020, the Attorney General issued a memorandum encouraging the BOP to prioritize home confinement, as appropriate, in response to the COVID-19 pandemic. See Prioritization of Home Confinement as Appropriate in Response to COVID-19 Pandemic, https://www.bop.gov/coronavirus/docs/bop_memo_home_confinement.pdf (last accessed January 10, 2022). To determine whether home confinement should be authorized, the Attorney General directed the BOP to consider "the totality of circumstances for each individual inmate, the statutory requirements for home confinement," and the following non-exhaustive discretionary factors: (1) the age and vulnerability of the inmate to COVID-19, in accordance with Centers for Disease Control ("CDC") guidelines: (2) the security level of the facility currently holding the inmate; (3) the inmate's conduct in prison; (4) the inmate's score under the Prisoner Assessment Tool Targeting Estimated Risk and Need ("PATTERN"); (5) whether the inmate "has a demonstrated and verifiable re-entry plan that will prevent recidivism and maximize public safety"); and (6) the inmate's crime of conviction and "assessment of the danger posed by the inmate to the community." Id.

On March 27, 2020, the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act") was implemented, authorizing the Attorney General and the BOP to "lengthen the maximum amount of time for which the Director is authorized to place a prisoner in home confinement" due to the COVID-19

pandemic. CARES Act, Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 281 (2020). On April 3, 2020, the Attorney General issued a memorandum authorizing the Director of the BOP to maximize the use of home confinement for appropriate inmates held at facilities where the Director determines COVID-19 has materially affected operations. Increasing Use of Home Confinement at Institutions Most Affected by COVID-19, https://www.justice.gov/file/1266661/download (last accessed January 10, 2022). This memorandum increased the number of inmates to be assessed for home confinement and directed that the BOP prioritize the most vulnerable inmates at the most affected facilities. Id. The memorandum stressed that the BOP should "continue making the careful, individualized determinations BOP makes in the typical case" to remain faithful to its duty to protect the public. Id. On April 13, 2021, BOP issued updated guidance regarding the factors to be assessed to ensure inmates are suitable for home confinement under the CARES Act. (Doc. 8-2 at 14-16). As of January 10, 2022, the BOP has 7,740 inmates on home confinement, with a total number of 36, 809 inmates being placed on home confinement from March 26, 2020 to the present. COVID-19 Home Confinement Information, https://www.bop.gov/coronavirus (last accessed January 10, 2022).

Under the CARES Act, the court has no authority to grant Banks' request for home confinement. "[T]he CARES Act provides the discretion for determining early home confinement release solely to the BOP." United States v. Mathews, No. 2:86-cr-197, 2020 WL 6781946, at *2 (E.D. Pa. Nov. 18, 2020); see also United States v. Ramirez-Ortega, 2020 WL 4805356, at *3 (E.D. Pa. Aug. 14, 2020) ("Importantly, the BOP has sole authority to determine which inmates to move to home confinement"

under the CARES Act). As such, this court has no authority to review the BOP's home confinement determination or direct the BOP to transfer a prisoner to home confinement. 18 U.S.C. § 3621(b)(5) (BOP's designation as to home confinement "is not reviewable by any court"). See also United States v. Robinson, No. 4:07-cr-389-10, 2020 WL 5793002, at *5 n.2 (M.D. Pa. Sept. 28, 2020) ("[T]he Court does not have authority to grant [a] request" for release to home confinement due to the COVID-19 pandemic because "the determination of an inmate's place of incarceration is committed to the discretion of the BOP director"); Ramirez-Ortega, 2020 WL 4805356, at *3 (noting that the BOP's home confinement determination "is not reviewable by courts"); United States v. Pettiway, 2020 WL 3469043, at *2 (E.D. Pa. June 25, 2020) ("Regardless of the nature of defendant's medical condition or the existence of the coronavirus pandemic, Congress did not provide the courts with the authority to release inmates into home confinement at an earlier time under the CARES Act."). Because this court cannot provide the relief requested by Banks under the CARES Act, Banks' § 2241 petition must be denied.

### III. Conclusion

We will deny the petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2241. An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:       January 11, 2022